DEANE, Appellant, v. TODD *et al.*, Respondents.

1. Where an assessment of a tax has been made by the assessor, and the party upon whose property the assessment has been made fails to make complaint, in respect to any error in the assessment, to the court of appeals when sitting for the correction of such errors, and the tax-books are made out and are delivered to the collector ; *held*, that the ordinary judicial tribunals have no authority to stay the collection of the tax at the suit of the tax-payer. The law has provided a special tribunal for the correction of errors in the assessment of taxes, and to that resort must be had. (SCOTT, J., dissenting.)

Deane v. Todd.

*Appeal from Washington Circuit Court.*

Plaintiff filed his petition in the Circuit Court of Washington county, praying that Todd, the sheriff and collector of said county, might be enjoined and restrained from collecting a certain tax alleged to have been improperly assessed against the plaintiff, and also praying that the county court of said county be directed to set aside and annul the assessment of said tax. It appears from the finding of the court, that on the 1st of February, 1854, the plaintiff was a resident of Washington county; that on that day he held a note or bond on the Potosi lead company for $72,300, to fall due October 1st, 1854, it drawing interest from its date. The Potosi lead company, as a corporation, was entirely insolvent on said 1st of February, 1854; but many of the individual members of the said corporation were entirely solvent. It is alleged in the petition, and not denied in the answer, that the only security the plaintiff had for the payment of the said sum of $72,300, was a mortgage of a certain tract of land which was assessed by the assessor of said county at $4,000. It is also found by the court that the plaintiff removed from the state of Missouri in April or May, 1854, he fixing his residence thereafter in the state of New York, and leaving one John Dean, jr., as his agent. After plaintiff had left the *state*, the assessor called upon John Dean, jr., the agent, for a list of plaintiff's property, and he gave to the assessor a list which did not contain the above note and mortgage for $72,300; which was afterwards added by the assessor and assessed at its apparent value. It is alleged in the petition, and not denied in the answer, that the plaintiff was returned by the assessor as a non-resident, and that his property was put upon the non-resident list; that neither the petitioner nor his agent were in the state at the time the court of appeals for said county was held, nor at the time notice was given of holding said court, and that they had no notice that the note had been added to the list handed to the assessor by plaintiff's agent, until after the court of appeals had passed, and the tax-books

had been handed to the collector. The plaintiff, upon learning of the said assessment, after the adjournment of the said court of appeals, applied to the county court to be relieved from the payment of the same. His application was refused, and thereupon the present suit was brought.

*Frissell,* for appellant. 1. The debt of $72,300 was not taxable for the reason that the Potosi lead company was insolvent. (Sess. Acts, 1849, p. 113.) 2. The reason for not applying to the court of appeals is sufficient. (R. S. 1845, p. 934, sec. 33.)

*Perryman & Carter,* for respondent. 1. The plaintiff has lost his remedy by permitting a term of the court of appeals, regularly advertised and held *according* to law, to pass, without making any complaint against the assessment. He has lost his remedy by his laches. (2 Sto. Eq. 895, 896.) 2. The plaintiff being a resident of Washington county, February 1st, 1854, the note was a proper object of taxation. (R. S. 1845, p. 931, 932, § 10, and 21 ; Sess. Acts, 1849, p. 112, 113.) 3. The fact that the Potosi lead company, as a corporation, was insolvent, did not make the said note an improper object of taxation. The individual corporators were solvent and liable. (R. S. 1845, p. 233, § 13.) 4. It does not matter that the property of plaintiff was put upon the non-resident list, as he was a resident of Washington county, February 1st, 1854.

LEONARD, Judge, delivered the opinion of the court.

Assuming, for the purpose of the present case, that the plaintiff ought not to have been taxed on account of the debt due him from the Potosi lead company, the assessment was not therefore void, so that the tax-book, delivered to the collector, conferred no authority upon him to collect the amount standing there against the plaintiff. It was at the utmost only erroneous, and for the correcting of such errors the law had provided a special tribunal, and directed the assessor's book to remain in the county court clerk's office, open to the inspection of all

Deane v. Todd.

persons interested, for ten days preceding the opening of the court of appeals. After the appeals are heard and determined, the tax-book is made out from the corrected book of the assessor and delivered to the proper officer, and it is his duty to collect the sums there specified, from the persons upon whom they are assessed; and for that purpose he has the same power to sell personal property that is conferred by an execution at law. It can not be maintained that the ordinary judicial tribunals have authority to stay the collection of a state and county tax, at the suit of a tax payer, upon the ground of an excessive or otherwise erroneous assessment. It was fit that a remedy should be provided to correct the errors of the assessor, but the necessities of the case required that it should be a speedy and summary one, and such a remedy has been accordingly provided, and must be considered as exclusive. If the party omitted to appeal, it was his own fault or misfortune and not the fault of the law; and if he was deprived of his appeal by the improper conduct of the assessor, this might be a ground for holding the officer responsible for the loss occasioned to the plaintiff; but it would furnish no ground for the courts to stop the collection of the tax until the propriety of it could be heard and determined in a suit instituted for that purpose, between the tax payer on the one side, and the collector and judges of the county court upon the other. If the assessment against the plaintiff could be considered as a nullity, conferring no authority upon the assessor to sell the personal property of the plaintiff, the remedy of the party would be to sue the officer for the trespass, and disregard the pretended title of the purchaser. So that, either way, there is, we think, no ground for this suit. The assessment may be erroneous; but if it be, we can not remedy it without overturning fundamental legal principles, and the party, therefore, must apply elsewhere for relief.

Judge Ryland concurring, the judgment is affirmed.

Scott, Judge. Several late cases have given the relief sought by the appellant and plaintiff in this proceeding. We

7—VOL. XXII.

Deane v. Todd.

have acted on the principle that relief would be given by injunction where an attempt was made to collect a tax not due by law. For some years this jurisdiction has been exercised without question. The point was raised and ably argued in the case of Ferguson v. The City of St. Louis, and it was solemnly decided that bills praying for relief under such circumstances should be entertained. Since that time, which was some six or more years ago, no question has been raised as to the jurisdiction of our courts in such cases. The case referred to has not been reported. I see no reason why that practice, thus sanctioned, and which has led to no inconvenience, should be departed from in this instance, unless the extreme severity of the case should be made the foundation of the exception. Here, a sum amounting to nearly a thousand dollars, not one cent of which is due by law, is attempted to be extorted from a citizen under a pretence of right.

I have always thought that the ground on which courts of equity, in some of the states, refused to interfere in such cases, was that the remedy was complete at law, inasmuch as the officer collecting such a tax would be a trespasser, and no title would pass to any property he might sell. To put it on the ground that the assessment is merely erroneous, and if the tax payer fails to take his appeal, he is without remedy, is to make an assessor a court of general jurisdiction, whose assessments, equalling judgments in point of force, can not be impeached in a collateral proceeding — a principle which would lead to such oppression and injustice as would appal the most hardy. The case under consideration fully illustrates the evil tendency of the principle maintained. The plaintiff here, in obedience to the requirements of the law, furnished the assessor with a list of his taxable property which was correct. The assessor, without informing the tax payer of his conduct, disregards the list and assesses him, in the teeth of the statute, with some seven or eight hundred dollars, on a debt due him by an insolvent corporation. As the tax payer was not informed, as he should have been by the assessor, that his list was disregarded, as he

was not delinquent, inasmuch as he had done every thing required of him by law, why should he lose his rights because he did not appeal, when it was impossible for him to do so, as he was prevented by the illegality of the conduct of the assessor? In my opinion, the judgment should be reversed.